Good morning, Your Honors. Jerry Steering for the Plaintiffs, Collins. This case is a pretty clear case of wrongful arrest, especially about the father who was arrested for alleged violation of aiding and abetting his son by claiming that he doesn't know whether his son struck an opossum with a shovel. The facts leading up to the police encounter aren't a dispute. The plaintiffs had two American bulldogs in their backyard. I think we all know the facts. The question I have is, where is the constitutional principle here, the violation? The officers believe that they have power or cause to arrest, and so they arrest. Where is the constitutional violation here? Well, the fact whether or not they believe they have probable cause is irrelevant for a Fourth Amendment probable cause termination anyway. Why is that? The law is sort of unclear in California, and they think it falls on one side of the line and the other side of the line. You can't torture opossums, right? You can't catch them. I guess this was a mother opossum. You can't take their babies and torture them in front of the mother. So they get there, they see the baby opossums strewn about dead and the mother cowering and bloodied, and the officers say, well, this looks to us like it might be a violation of the torture statute, the statute prohibiting torture of animals. The officers admit and testify that they never discussed or considered the issue of whether or not the plaintiff's appellant's bulldogs that were in the backyard with this opossum for two hours while the plaintiffs were begging animal control to come over to the house had injured the opossum as opposed to some other explanation. It was never even discussed. So? Well, then the basis for the injury to the opossum should have been inquired by the officers once they learned and were told about the dogs in the backyard with the opossum for two hours. Opossums don't do very well in an enclosed backyard with American bulldogs. And they made it known to the officers as soon as they got there, this is what was going on. The animal control officer knew when she got there that they had been begging for two hours for animal care services to come over. And yet in the police reports, in the animal care reports, no mention of any claim that the animal care officer didn't, you know, said to them. It sounds like you might have a pretty good claim in the state law. Maybe you can file a complaint against officers for sloppy police work, but what does that have to do with the Constitution? The fact that the alternative explanations or the alternative explanation might have been developed if they had thought to ask the questions or they considered these other possibilities doesn't change the fact that there's probable cause. I mean, there can be probable cause to believe that the crime was committed in various ways, mutually inconsistent. You see two people standing over a body, each of them holding a gun. You might say, wow, there's probable, and there's only one bullet hole. You might say, well, there's probable cause to believe A did it, and it might be probable cause to believe B did it. We don't know. And maybe those are mutually inconsistent, but we're going to arrest both of them and figure it out later, because there's probable cause that, probable cause does not mean a certainty, and it doesn't mean a mutually exclusive possibility that the crime might have been committed a different way. But not on the dad. That's the, in other words, the probable cause for the... The dad is there aiding and abetting, so if he is handing and encouraging the kid who's a minor and encouraging him to commit crimes or aiding and abetting him by handing him, encouraging him to use the shovel, then why isn't he involved, too? I don't know. The officer testified that he didn't think that the father had encouraged the son. He said that, based on what he was told, that he didn't stop the son from hitting the apostle. And the officer testifies that they, that Officer Tisdale arrested the dad for PC-32, not for animal cruelty, for PC-32, for aiding and abetting, because he said he didn't see whether his son hit the possum with a shovel. That's not a crime. Let me ask you just one question on Section 32. Let's say the officer had asked the father, did you see your son hit the possum with a shovel? And the father said, no, my son never hit the possum with a shovel, right? I know that's not what happened here, but let's say that's the hypothetical set of facts. Would you agree that that's an affirmative lie that could violate Section 32? No. There's a, in the cases that we cited, there's a distinction between an affirmative factual representation, like a false alibi, like, no, I was with him at the store, or we weren't home that night, or something of that nature, as opposed to just a witness saying they didn't see something. Well, no, no, just play with my hypothetical, though. The officer says, did your son hit the possum with the shovel? And the father says, no, my son never hit the possum with a shovel. And the officer has reason to believe that is just a flat-out lie, right? The father's trying to cover for the son by misleading the officer as to what happened. Are you saying that that's not a violation of Section 32? No. It's not a violation. What's the authority for that? Well, look, excuse me for saying that, but here's the problem. In any given situation, there can be inconsistent witness testimonies, okay? There was inconsistent witness testimonies. And the fact that one witness's testimony is inconsistent with another's does not mean that either one of them are covering for anybody. That's something that the officers would have to sort out later. But just for the purpose of probable cause, if I'm the officer and I believe that you are lying to me about something that you know to be untrue in order with the intent to cover up for someone that you're trying to help, it seems to me that that's a violation of Section 32 under that case that you cite, this Plank saying tip case. Is that the case you're thinking of? Yes. I mean, we've looked at that case. It seems to suggest that if you affirmatively lie to an officer with the intent to cover up a crime in order to help the other person, that that's a violation of Section 32. I'm trying to get a sense of why you don't think the facts in this case fall under that rule. Well, the father said, I didn't see what happened. I'm squeamish. I turned away. That's what he said. And what if he's lying? Then maybe he's lying. Well, if he's lying, does that mean it was a crime? That the son tortured the possum? No, it's not a crime. He turned away because he didn't want to see him kill the possum? Well, even Judge Carney at the district court level didn't find any torture and didn't find that the – Well, what was the crime? There wasn't a crime. They claimed there was 597A of the Penal Code, which is animal cruelty. Judge Carney claims that the contours of that statute aren't well defined enough for the – I thought the statute said that you're allowed to kill a possum if it's in your backyard. You are allowed to kill a possum. Well, that's what I'm trying to find. What crime did the officers think had been committed? There wasn't a crime. They thought it was – they didn't even know what the animal cruelty statute was. They didn't know anything about what animals you could or couldn't kill. They relied on animal care services who are sitting there looking at a copy of the Penal Code with the police. They're not looking at case law. They're not looking at annotations. They're just looking through, leafing through the Penal Code to see whether or not that kind of conduct is criminal. They're not looking through the California Code of Regulations and the California Fish and Game Code that says that you can kill a possum. You can kill them. You just can't torture them. And the cases in California under 597 that have held – affirmed convictions for 597 all deal with these outrageous torture cases, with crushed videos, sticking a pole through the eye of a mother possum. Those cases don't say that that's the only conduct that violates Section 597, right? That's certainly at the highest extreme of torture or malicious wounding. But the statute here just says if you maliciously wound an animal, you're guilty. And why isn't bashing a possum over the head three times with a shovel malicious wounding or potentially? Well, here's the thing. The more murky the contours of 597A are, the less possible a PC-32 conviction is. Because for a PC-32 conviction, the person has to actually know and be aware that the other person committed a felony. So if the district court says, well, the contours of 597A aren't sufficient to know whether or not bonking a possum on the head with a shovel, which didn't happen anyway, but bonking a possum on the head with a shovel is or is not a crime, there's not enough knowledge, there's not enough case law developed to know about that, or the language of the statute isn't clear enough to know about that, then how can a person like Mr. Oliver, the dad, be charged with knowingly concealing or protecting a person who they knew committed a felony? I mean, you can't have it both ways. The more vague the statute is, the less culpable the father is under PC-32. So if you make a finding that it's vague, then you can't have a PC-32 conviction. Thank you. We'll hear from the city. Good morning, Your Honors. Moses Johnson, Assistant City Attorney for the City of Anaheim and its Police Officers. Your Honors, basically what this case boils down to is the plaintiff just doesn't like the decision the officers reach. The officers interviewed everybody, including his clients, who they chose not to believe because they felt they were covering up what the son did. Which was what? What did they think happened that was a crime? Well, the witness across the street told them, and also told the animal control officer, that he saw the son hit the mama opossum on the head with the metal end of the shovel three times. Well, let's assume the son was trying to kill and did kill the opossum. The opossum was so badly injured it eventually had to be put down. Yes, okay. So what's wrong with that? The statute says you cannot wound an animal, and the opossums are covered under that statute. I thought the opossums were excluded from that. No. If you look at the other section that I cited in my brief, 599C, it says every dumb animal is covered. Basically, dumb in that instance means they can't speak like we can. I cited you a case that even a rooster is covered by those statutes. This is a case that if you don't feel there was PC, there clearly is qualified immunity here. This is a case of first impression. It says non-game animals such as opossums may be taken at any time on private property by the landowner or his agents. Aren't opossums excluded by regulation? I mean, isn't the law that you can kill a opossum? That is a, if I believe what you're citing too, is the regulation. There's also, I believe, a fish and game statute. It's limited as to when you could do that. I believe that statute limited it to nighttime only. This was clearly in the daytime. So I don't even think they fall under that statute. Well, I don't know. If you're right and it's limited to nighttime, that's different. But tell me where it's limited to nighttime. As I understood it, you can kill a opossum that's on your property. I believe that statute defined it as a half hour after sunset until a half hour before morning, if I recall correctly. I haven't seen that. So would you tell me where I find that? It's part of the statute you're citing too. I believe it's fish and game code. I think it was 4150 or something like that cited in plaintiff's brief. But that's not even relevant here. It says here it may be taken at any time. That doesn't sound like it's limited to nighttime. There's another statute the plaintiff cited too that defines it. Maybe it was the regulation that limited that to nighttime only. This is the regulation. This is 472. It says the following non-game birds and mammals may be taken at any time of the year and in any number except as prohibited by Chapter 6. English sparrow, startling, coyote, weasel, skunks, opossum, moles, and rodents. I can see the opossums listed there, but that does not supersede what's in the penal code under both 597 and 599 that says you cannot intentionally wound any animal. Heck, even the Tominson case that plaintiff cited involved basically rats, and they were convicted under that statute. So the fact that a regulation lists that maybe sometimes you can do it doesn't mean you can intentionally wound any kind of animal. I don't know where the rats were in that case, but this is on private property, and this case would seem to be a good reason that you can kill an opossum on private property because the opossums get into a fight with your dogs. I don't want to defend or attack the wisdom of Californians in passing the statute and these regulations. And I also understand that all this is all legal fiction, that police officers know everything that's in every statute and every regulation. But law is full of legal fictions that may or may not make sense. But I'm trying to understand the law in this case. As I understand it, the law is you can kill an opossum that's on your property. And as I understand from the district court, they hit the opossum twice with a shovel, he was still alive, and then they hit him again to kill him. But it sounds to me from what I've read of the regulations, it's a perfectly lawful act. And therefore, assuming the legal fiction that the officer knows the law, he has no probable cause to make an arrest if all you've done is commit a lawful act. Again, you still have 597 and 599. The only laws that the officers had with them at the time was their copy of the penal code, which they didn't look at before they arrested them. Well, that's the problem. I mean, to say that the officer only had one code with them and didn't have the regulations, you know, if we acted differently and said what officers do is reasonable, not whether he's presumed to know the law, it might make a more sensible legal regime. But as I understand the law, it's either a legal or an illegal act, and it's like all of our laws and whether we know what's clearly established by the Supreme Court or not. The first question I think we have to come to is, was their act legal or illegal under California law? Under 597 and 599 it was. Well, it doesn't matter whether it's under one section or another. It's under all the law that's applicable. Of all the law that's applicable, any animal, it doesn't matter what kind of animal it is, you cannot intentionally wound it or maim it intentionally, which was the act here. But what do you make of 599C? That's the statute I'm relying on, 599C, that talks about this. Well, no, actually what it says is, no part of this title shall be construed as interfering with any laws of the state known as the game laws, or any laws for or against the destruction of certain birds, nor must this title be construed as interfering with the right to destroy any venomous reptile or any animal known as dangerous to life, limb, or property. Possums aren't dangerous, Your Honor. Well, but it says... You obviously don't have chickens. I'm sorry? You obviously don't own chickens. No, I don't, Your Honor. Oh, they're vicious chickens. If you have cats, or small animals, oh, absolutely. I mean, I've seen possums come in people's backyard and eat their fruit and stuff like that. They can attack you. Fruit is property too, isn't it? Yes. So, I'm sorry, why isn't this covered by 599C? 599C works along with 597, Your Honor. Well, it says, 599 says 597 doesn't apply, cannot be construed to interfere with the right to destroy animals known to be dangerous to life, limb, or property. Well, then I guess I disagree that possums are dangerous. And where was the possum at the time this act took place? It wasn't... Let's say I disagree with you on that. Okay. Let's say we look at it and we disagree with you on that. Do you have 599C? I think you should be looking at it because it's sort of... Do you agree with me that that knocks 597 out of the picture altogether? Let me find it in my brief, Your Honor. Actually, let me... It's cited in the court opinion, I believe. You came to court without the statute, huh? This is the statute you're relying on? You came to court without it? It's cited in the... Well, it may be cited, but if you're going to read it, you need to actually look at the text. I have looked at the text, Your Honor, and I disagree that it doesn't apply. Well, explain to me. I mean, I don't understand your answer, so you better tell me why 599C is... Assuming that... And I realize you have a disagreement as to whether they are dangerous to property, but let's assume that they are. Okay. Does 599 knock out 597, basically knock it out of the picture? In certain circumstances, the two have to be read together, Your Honor. I don't understand your answer at all. That's sort of a totally non-helpful answer. I'm talking about this case. I'm not talking about every case in the world. I'm talking about this case. I understand. Okay, so what's your answer? I'm saying 597 says you cannot intentionally wound an animal. 599 talks about there's exceptions for certain game laws in certain situations, like hunting and things of that sort. I know what it says. I've just gone over it. Like finding a possum on your property. It says you can destroy animals that are dangerous to life and limb and property. No, it says specifically including possums. Not under 599. That's under a different statute. That's under a fishing game statute. Well, okay. Okay, so let's go back to 599. Okay. You've now told me what it says. My question was specifically if we, if we, if it turns out that possums are dangerous to property, does 599 knock out 597, so as to make it irrelevant in this case? Not necessarily, Your Honor, because 597 How about a yes or no answer? No. How about, you know, this is the facts of this case. This is the record in this case. The answer is no. Explain why. Not under the facts of this case. Okay, why not? Because you've got to remember, one, plaintiffs deny that they ever hit the possum at all. Two, where did the act take place? The question is, does 597 apply? 597 does, yes. Counsel, didn't Thomason deal with this exact question? Yes, and that was what I was trying to find because I cited all of that in my brief. Your Honor, under the facts of this case, where the possum was allegedly hit was technically not even on plaintiff's property. It was in the public street. It was in the curb at the edge of their driveway. Their dogs weren't in danger anymore. They had removed the possum from the backyard. What does that answer do with 599? Because if they're arguing that they were trying to defend the property, their property wasn't in danger when they had removed the possum from the property. It doesn't say anything about the property. See, this is why it's important for you to be actually looking at the language of the statute. 599C doesn't say anything about your property. It just says, shall not be construed as interfering with the right to destroy any animal known as dangerous to life, limb, or property. The possum in the front yard, Your Honor, was not dangerous to anybody. All they had to do was flip the basket over and let the possum walk away. The possum wasn't attacking anybody at the time, so even if it can be destroyed when it's dangerous, under the facts of this case, this possum wasn't dangerous out in the front yard. It's an animal known as dangerous. So that doesn't mean that it has to be specifically dangerous situation. It means this is the kind of animal that creates a danger to life, limb, or property. I don't know. I'm just reading the statute. I understand what the statute says, but under the facts of this case, this possum wasn't dangerous, and I disagree with you that a possum is dangerous. The fact that a possum may sometimes fight with a rooster or a dog or a cat doesn't make them dangerous in the sense that they're going to kill somebody. Oh, sure. They kill. They kill animals, house animals, all the time. I'm not saying that they can't. They got claws like most animals. And teeth, really nasty, big teeth. They got big teeth. But, Your Honor, in what I asked the court to take judicial notice of and which was cited in the David R. case, the National Possum Society, the facts that I cited to the court, which this court doesn't have to take notice of if they don't like it, but possums normally want to be left alone. And like most animals, when they're attacked, they will defend themselves. So just assuming that they're dangerous gives them the right to kill them. You are disputing the premise. I said assume they're dangerous. I understand you have a disagreement about that, and we can't disagree. Under that statute, if it's known to be dangerous, and I would argue you've got to have the facts to back it up, you could destroy them. That's not what I'm arguing, Your Honor. You said this possum wasn't dangerous. I said under the facts of this case. That this possum wasn't dangerous as opposed to other possums. It wasn't dangerous at the time that they flipped the basket off at the edge of their driveway. So a friendly possum would be excluded from this? Your Honor, it's just like when a – Or a friendly wolf or a young wolf. Or a friendly venomous snake, because it might slither away, right? The fact that it might come back later and bite you, if the rattlesnake is moving away from you, then you've got to let it go under your construction, right? Your Honor, I'm just asking. I don't know. The hypothetical I would throw back to you, all dogs have teeth and can bite and hurt people. Do we determine that all dogs are dangerous and you can kill them at any time? No, that's not what – nothing in the statute says that or under regulation. But you ought to suggest that to the Anaheim City Council. They might pass a regulation like that. I don't know that we have control over that. I believe only the State does to pass those fish and game regulations. Well, then we won't suggest it to them. Okay. I mean, let's put it this way. Clearly, if the courts are struggling with whether this applies or not to a possum – You're trying to make us struggle, but not successfully. Well, if the district court did and felt the contours of the law weren't clear, then this is a case that screams out for qualified immunity, whether there was a constitutional violation or not. If the statute means something. It does. That you can read and understand the statute, then it doesn't cry out for qualified immunity. Any good lawyer can make any statute seem unclear. The question is, after looking at all the provisions of the statute, does the court think it's unclear? You're going to have to say that a police officer who patrols the streets is going to know that a possum is classified as a dangerous animal. No, I don't expect them to know because I don't really think, as a matter of fact, a police officer knows all of the laws. That's the way our law has developed. We ask police officers to be held responsible for knowing all the laws. Now, in the end, it's not that terrible a thing because the city council will provide insurance, which will pay for the police officer in the end. So it's not such a terrible thing, but it's still a legal fiction that officers know all the statutes. They may not know what the interpretation of every case will be, but they're held responsible for knowing all of the statutes and regulations. Well, I believe under the Tomlinson case that even plaintiffs cited that these officers can't be found at fault for arresting the plaintiffs in this case. You know, there's not insurance involved here, Your Honor. This is general fund money. This is taxpayer money. Well, you have a choice to get insurance, and you decide to fund liability in all cases with taxpayer money. If there's an automobile accident and the city's held liable, you could add insurance, but you decide to fund it. So that's a choice you make. I agree. Can I ask you just one question on a totally different topic? Yes. Because you might not get there, but if the officers were entitled to qualified immunity here on the federal claims, is the analysis under 847B exactly the same? It's very similar to the statute under state laws. If the officers had a reasonable cause, it's very similar to probable cause. Do you have any case law authority that says that the analysis under federal qualified immunity basically covers the ground of 847B? The case I cited to was the Hamilton v. San Diego case that discusses the reasonable cause under state law. That was also analyzed in my brief and in the district court's decision. It's very similar. It's not exactly the same. Federal qualified immunity does not specifically apply to state law claims. The Venegas case held that. I don't dispute that. But we have a similar reasonable cause basis under 847B, which was briefed in my original motion. Okay. Thank you. Thank you. I'll give you a minute for rebuttal. Thank you. Thank you for the court for mentioning 847B. 847B isn't what some of the recent courts said it is. The Knapp case, which is the district court case that was cited, I think, by the court and by Mr. Johnson about Knapp, K-N-A-P-P, the Knapp case, talks about that 847B can apply in a case. There's another case, Enderly v. City and County San Francisco, that talks about 847B didn't apply in that case. But if you look at the Hamilton case and you read the Hamilton case, it doesn't talk about 847B. It talks about 847. It doesn't talk about B. And if you look at the definition of what reasonable cause is, it's the same thing as probable cause under California law. If you look at the arrest statutes, that same case that Your Honor mentioned, the Plank-Sand-Tip case, the same one that's cited, defines what reasonable cause is for an arrest, and it says it's a strong suspicion in the mind of a reasonable person, which is exactly the same as the state law for probable cause. There's no difference. If the officers had probable cause, the arrest would have been lawful, right? If they had probable cause. Okay, but so if you look at 847B, right, it gives immunity if the arrest is either lawful or if the officer had reasonable cause to believe the arrest was lawful. So it doesn't seem that those could be, they've got to be talking about something else when they're talking about reasonable cause, right? No. It's poor drafting. O'Toole v. Superior Court, 140 Calab 4th, 488, talks about 840, which was a 2006 case that referenced Hamilton. This is how this whole mess got started, okay? It references Hamilton as setting out some type of quasi-state qualified immunity under 847B. But if you read Hamilton in its sites, it talks about 847B, says the arrest was lawful or the peace officer at the time of the arrest had reasonable cause to believe the arrest was lawful. There is no difference. That's what O'Toole says? Well, yeah, that's what O'Toole, they're just citing 847B. And then as soon as they cite Hamilton in O'Toole, they say reasonable cause to arrest exists when facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt. And that's the California standard for probable cause. All I'm saying is the statute was poorly drafted and there is no difference. Okay. What do you make of P. Thomason? It's a torture case. It's a torture case. It's where they were actually, they're torturing. I know what they did, but I don't see why that matters. As I read the statute, it's either 597 applies or doesn't apply. If it doesn't apply, if you're dealing with a venomous snake, for example, you can torture it all you want because 599 doesn't apply. So what do you make of Thomason? Well, a mouse isn't dangerous. Well, that's not what the court, that's not what Justice Lilly said there. What she said was that these were mice bought from the pet barn, so these mice weren't dangerous. I mean, the amount of damage to property caused by mice in California must run into the millions of tens of millions or hundreds of millions of dollars on farms and in homes, the various ways in which they destroy crops, destroy feed that's stored and so on. So there's no doubt that mice are dangerous to property, but what she said is these mice were not the kind of mice that are dangerous to property because they were bought in the store, which lends support to your opponent's argument that you have to look at this on a mouse-by-mouse or possum-by-possum basis, and you have to look at whether this particular animal is dangerous. So I don't know. Does that bother you to look at this particular possum who was in a fight with the dogs? I'm sorry, Your Honor. I said, would it bother you for your case if you had to look at this particular possum who was in a fight with the dogs and therefore dangerous to property? It is dangerous to property. This possum took a chunk out of those dogs. I mean, a chunk. And those dogs didn't like it, and they took chunks out of the possum. I can believe it. You've never seen a possum? Two hours, okay? And when they get there, they're told this, and they don't care about anything. They just want to arrest the dead. I think maybe we've heard enough about possums for the day. I have a hard time getting enough about possums. I must say, I could talk about them all day. But I think we'd better go on to the next case. Thank you, counsel. The case as argued will stand submitted. We will next hear argument in the last case on the calendar, Garcia v. Corral.
judges: Kozinski, Reinhardt, Watford